**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| GD Energy Products, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 6:25-cv-441 |
| v. ) | |
| ) | **COMPLAINT** |
| Southwest Oilfield Products, Inc. ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## COMPLAINT

Plaintiff, GD Energy Products, LLC ("Plaintiff" or "GDEP"), by its attorneys, brings this action for damages and injunctive relief against Southwest Oilfield Products, Inc. ("Defendant" or "Southwest") for willful patent infringement, and alleges as follows:

## I.
## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

2.     Southwest has infringed and continues to infringe at least one claim of each of U.S. Patent Nos. 11,208,997 (the "'997 Patent"), 11,732,709 (the "'709 Patent"), and 9,732,746 (the "'746 Patent") (collectively, the '997 Patent, '709 Patent, and '746 Patent being the "Asserted Patents").

3.     With knowledge of the Asserted Patents, Southwest infringes the Asserted Patents by developing, making, using, selling, offering for sale, and/or importing into the United States products that incorporate the technology patented in the Asserted Patents.

---

**COMPLAINT**                                                                                      **Page 1**

4.    The '746 Patent was previously litigated in this Court in the matter captioned *GD Energy Products, LLC v Premium Oilfield Technologies, LLC*, Case No. 6:21-cv-00864-ADA.

5.    GDEP seeks damages and other relief including a permanent injunction for Southwest's infringement.

## II.
## PARTIES

6.    Plaintiff GDEP is an Oklahoma corporation with its principal place of business located at 4747 South 83rd East Ave, Tulsa, Oklahoma, 74145.

7.    Defendant Southwest is a Delaware corporation with a principal place of business located at 7903 Breen Rd., Houston, Texas, 77064.

8.    In addition to having its principal place of business in Houston, Southwest maintains facilities in this judicial district, in West Odessa, with an address of 8720 N Co Rd., West Odessa, TX 79764, and in Pecos, with an address of 2416 Cothrun, Pecos, TX 79763. *See* https://swoil.com/contact/.

## III.
## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over GDEP's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), because they arise under the laws of the United States, specifically those related to the infringement of U.S. Patents, 35 U.S.C. § 1, *et seq*.

10.    Southwest is subject to this Court's specific personal jurisdiction, at least because it markets, distributes, offers for sale, and/or sells infringing products throughout the United States from, and including in, this judicial District. This Court further has specific personal jurisdiction over Defendant because, as described below, it purposefully avails itself, and enjoys the benefits, of the laws of Texas, it has sufficient minimum contacts with the State of Texas and this District,

this action arises out of these contacts, and exercising jurisdiction over Defendant would be reasonable and comport with the requirements of due process.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) at least because Southwest has committed acts of infringement and has regular and established places of business in this District.

## IV.
## FACTUAL BACKGROUND

### A.     GDEP

12.     GDEP's history spans over 150 years, from when Robert Gardner developed a revolutionary compressor and founded Gardner Denver. Over the years, GDEP has developed into a world leader in pumping technology and services. GDEP designs, makes, and sells a variety of pump systems and parts (*see, e.g.*, https://gdenergyproducts.com/products) and provides related services (*see, e.g.*, https://gdenergyproducts.com/services).

13.     GDEP's competitiveness depends in large part on its research and development activities, which allows it to successfully develop and launch new products while reducing its costs. GDEP protects its research and development investments by, among other things, filing patent applications from which GDEP has been rewarded with patents held around the world including the Asserted Patents.

### B.     The '997 Patent

14.     The '997 Patent is directed to features of a wear plate for a drill pump. A true and correct copy of the '997 Patent is attached hereto as **Exhibit A**.

15.     The '997 Patent, entitled "Wear Plate for a Drill Pump," was duly and legally issued by the United States Patent Office on December 28, 2021 from an application filed on March 13, 2018, naming Kyle Christopher Chady and Jordan Anthony Genenbacher as inventors.

16.    The '997 Patent claims priority to U.S. Provisional Application 62/471,153, filed March 14, 2017.

17.    GDEP holds, by assignment, all right, title, and interest in and to the '997 Patent.

18.    Pursuant to 35 U.S.C. § 282, the '997 Patent is presumed valid.

19.    The '997 Patent generally relates to a wear plate assembly design for a drill pump. An exemplary embodiment of the inventive wear plate assembly is shown in Figure 5 of the '997 Patent, reproduced below with annotated features. As shown below, the exemplary wear plate assembly embodiment includes an annular wear plate, a radial seal on the radially outer surface of the wear plate, and an axial seal positioned adjacent to a shoulder of the wear plate. As explained in the '997 patent, either seal or both seals may be used.



FIG. 5

20.    An exemplary arrangement of the wear plate assembly within a fluid end bore of a housing of a drill pump is shown in Figure 7 of the '997 Patent, reproduced below with annotated

references identifying relevant features. When arranged in the fluid end, the radial seal (if present) engages the fluid end bore and the axial seal (if present) engages the housing.



FIG. 7

21.     Claim 1 of the '997 Patent reads as follows:

1. A drilling module of a drill pump, the drilling module comprising:

a housing defining a fluid path having a fluid inlet, a fluid outlet, and a fluid end bore branched off therebetween;

a piston retainer mounted to the housing such that the piston retainer is external to the fluid end bore; and

a wear plate assembly positioned within the fluid end bore and abutting against the fluid end bore and the piston retainer, the wear plate assembly comprising:

an annular wear plate having a radial outer surface; and

a radial seal compressed between the fluid end bore and the radial outer surface of the annular wear plate.

22.    The wear plate assembly of the '997 Patent represents a significant improvement over the prior art.

23.    The drilling module as claimed in the '997 Patent provided a novel and nonobvious solution at the time of the invention.

24.    The '997 Patent is practiced by GDEP including by, for example, GDEP's 7500 HD Fluid End, pictured below.



*See*

https://fs.hubspotusercontent00.net/hubfs/19543953/Spec%20Sheets/GDEP_GD%207500%20HD%20Module_Spec%20Sheet_2022.pdf.

25.    Pursuant to 35 U.S.C. § 287, GDEP marks its 7500 HD Fluid End products with the '997 Patent.

### C.    The '709 Patent

26.    The '709 Patent is directed to a wear plate for a drill pump. A true and correct copy of the '709 Patent is attached hereto as **Exhibit B**.

27.    The '709 Patent, entitled "Wear Plate for a Drill Pump," was duly and legally issued by the United States Patent Office on August 22, 2023 from an application filed on November 22, 2021, naming Kyle Christopher Chady and Jordan Anthony Genenbacher as inventors.

28.    The '709 Patent is a divisional of the '997 Patent and claims priority to U.S. Provisional Application 62/471,153, filed March 14, 2017.

29.    GDEP holds, by assignment, all right, title, and interest in and to the '709 Patent.

30.    Pursuant to 35 U.S.C. § 282, the '709 Patent is presumed valid.

31.    The '709 Patent generally relates to a wear plate assembly design and includes the same disclosure as the '997 Patent. The exemplary embodiments of Figures 5 and 6 are reproduced below with additional annotations identifying yet other features of the invention.



**FIG. 5**



**FIG. 6**

32.     Claims 1 and 2 of the '709 Patent read as follows:

1. A wear plate assembly of a drill pump, the wear plate assembly comprising:

a wear plate extending between a first axial end and a second axial end, the wear plate comprising:

an annular cross-section defined by a bore inner surface and a radial outer seal surface, the bore inner surface being configured to form at least a portion of a flow path between a housing and a piston when the piston is external to the housing,

an annular seal groove in the radial outer seal surface at a position between the first axial end and the second axial end, and

a shoulder extending radially outward from the radial outer seal surface at the second axial end.

2. The wear plate assembly of claim 1, further comprising a radial seal positioned within the annular seal groove, the radial seal being compressible in a radial direction.

33.     The wear plate assembly of the '709 Patent represents a significant improvement over the prior art.

34.     The wear plate assembly as claimed in the '709 Patent provided a novel and nonobvious solution at the time of the invention.

35.     The '709 Patent is practiced by GDEP including by, for example, GDEP's 7500 HD Fluid End.

36.     Pursuant to 35 U.S.C. § 287, GDEP marks its 7500 HD Fluid End products with the '709 Patent.

**D.     The '746 Patent**

37.     The '746 Patent is directed to a fluid end used in high pressure pumps. A true and correct copy of the '746 Patent is attached hereto as **Exhibit C**.

38.     The '746 Patent, entitled "Fluid End of a High Pressure Plunger Pump," was duly and legally issued by the United States Patent Office on August 15, 2017 from an application filed on May 16, 2016, naming Arun Nahendra Raj Chandrasekaran, Christopher Douglas Degginger, and Gregory David Hash as inventors.

39.     The '746 Patent is a continuation of U.S. Application 13/773,271, which was filed on February 21, 2013, which is a continuation-in-part of U.S. Application 13/646,170, which was filed on October 5, 2012, and claims priority to U.S. Provisional Application 61/704,905, filed September 24, 2012.

40.     GDEP holds, by assignment, all right, title, and interest in and to the '746 Patent.

41.     Pursuant to 35 U.S.C. § 282, the '746 Patent is presumed valid.

42. The '746 Patent generally relates to an improved fluid end design. In an exemplary embodiment described in the '746 Patent, a fluid end of a pump includes four bores (inlet, outlet, plunger, and valve cover bores) that define a cross bore intersection space, and has an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space. V-shaped grooves are provided around opposing parts of the transition area. An inlet spring retainer that retains a valve in the inlet bore may be positioned in a first orientation during installation, removal, or maintenance, such that it does not interface with the grooves. The inlet spring retainer may also be positioned in a second orientation where it interfaces with the grooves, which prevents it from moving axially and allows it to retain the inlet spring and allows the inlet valve to operate. For ease of reference, Figures 8 and 9 of the '746 Patent are reproduced below.



43. The arrangement and groove configuration of the '746 Patent represents a significant improvement over prior art retainer designs that imparted stress into the structure of the fluid end resulting in systemic failures.

44.    For example, claim 5 of the '746 Patent reads as follows:

5. A fluid end of a plunger pump comprising:

a casing defining at least one working space, the at least one working space comprising:

an inlet bore centered on an inlet bore axis;

an outlet bore centered on an outlet bore axis that is coaxial with the inlet bore axis;

a plunger bore centered on a plunger axis, the plunger axis arranged perpendicular to the inlet bore axis;

a valve cover bore centered on the plunger axis, the inlet bore, the outlet bore, the plunger bore, and the valve cover bore cooperating to define a cross bore intersection space, wherein the casing defines an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space;

a first V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis;

a second V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis, the first V-shaped groove and the first V-shaped groove and the second V-shaped groove each comprise an upper surface and a lower surface that intersect at a fillet, the upper surface and the lower surface of the first V-shaped groove and the second V-shaped groove defining an exterior angle between 180 degrees and 270 degrees; and

an inlet spring retainer including a first engagement portion and a second engagement portion, the inlet spring retainer orientable in a first orientation in which the inlet spring retainer is movable from the inlet bore to the plunger bore and a second orientation in which the inlet spring retainer engages the first V-shaped groove and the second V-shaped groove to inhibit movement of the inlet spring retainer from the inlet bore to the cross bore intersection space.

45.    The fluid end of the '746 Patent represents a significant improvement over the prior art.

46.     The fluid end as claimed in the '746 Patent provided a novel and nonobvious solution at the time of the invention.

47.     The '746 Patent is practiced by GDEP including by, for example, GDEP's 7500 HD Fluid End.

48.     Pursuant to 35 U.S.C. § 287, GDEP has continuously marked its 7500 HD Fluid End products with the '746 Patent.

**E.     Defendant Southwest**

49.     On information and belief, Southwest has been in business since 2008.

50.     On information and belief, Southwest's business model revolves around copying and selling replaceable portions of various manufacturers' pump systems and parts. For example, Southwest has copied and now offers for sale replacement versions of GDEP's high pressure fluid end modules, as shown below, allegedly for the stated purpose of providing "seamless integration into existing pump systems" including Gardner Denver's PZ11. *See* https://swoil.com/fluid-ends-2/.

51.     Southwest promotes its products, including the "OEM Style Fluid End for Gardner Denver PZ11-HD 7500PSI," using various advertisement and marketing materials including the data sheet in **Exhibit D**.

**V.**
**COUNTS**

**A.     Count I - Infringement of U.S. Patent No. 11,208,997 (the '997 Patent)**

52.     GDEP realleges and incorporates by reference the allegations of paragraphs 1 through 51 set forth above.

53.     Southwest directly infringes, literally and/or under the doctrine of equivalents, the '997 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United

States or importing into the United States its "OEM Style Fluid End for Gardner Denver PZ11-HD 7500PSI," along with related products (collectively the "Accused Products").

54.    As a non-limiting example, Southwest directly infringes, literally or under the doctrine of equivalents, at least independent claim 1 of the '997 Patent in at least the following manner.

55.    The Accused Products include a "[a] drilling module of a drill pump, the drilling module comprising: a housing defining a fluid path having a fluid inlet, a fluid outlet, and a fluid end bore branched off therebetween; a piston retainer mounted to the housing such that the piston retainer is external to the fluid end bore;" as shown in the drawing of the Accused Products reproduced below, taken from p. 2 of **Exhibit D,** with exemplary annotations added:



56.    The Accused Products include "a wear plate assembly positioned within the fluid end bore and abutting against the fluid end bore and the piston retainer, the wear plate assembly comprising: an annular wear plate having a radial outer surface; and a radial seal compressed between the fluid end bore and the radial outer surface of the annular wear plate[]" as illustrated in the above drawing. The wear plate assembly of the Accused Products can be seen in more detail in the photograph below (**Exhibit E**), which shows the radial outer surface and the radial groove where the radial seal is installed in the assembled configuration shown in the drawing above:



57.    Southwest has infringed, and continues to infringe, literally or under the doctrine of equivalents, at least claim 1 of the '997 Patent in violation of 35 U.S.C. § 271(a), by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

58.     On information and belief, Southwest indirectly infringes the '997 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly inducing its customers to directly infringe one or more claims of the '997 Patent. Specifically, Southwest induces, encourages, and intends that its customers directly infringe the '997 Patent through, for example, their advertisement, marketing, sales, instructions, product manuals, technical support, onsite testing, use, quality assurance, and maintenance of the Accused Products. Southwest has known and knows that its customers' making and use of the Accused Products constitutes direct infringement of at least independent claim 1 of the '997 Patent.

59.     On information and belief, Southwest indirectly infringes the '997 Patent, in violation of 35 U.S.C. § 271(c), by actively and knowingly contributing to infringement of one or more claims of the '997 Patent, at least by selling and/or offering to sell wear plate assemblies and components (*see* **Exhibit F**), knowing that such wear plate assemblies and components are especially made or adapted for practicing one or more claims of the '997 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically, Southwest has known and knows that its wear plate assembly is especially made or adapted for use with and in the Accused Products, and that after installation, use of the Accused Products by Southwest's customers constitutes direct infringement of at least claim 1 of the '997 Patent. Moreover, Southwest has known and knows that there is no substantial, non-infringing use for its wear plate because its only use is with the Accused Products.

60.     GDEP marks its products with the '997 Patent pursuant to 35 U.S.C. §287.

61.     Southwest has actual and constructive notice of the '997 Patent based at least in part on GDEP's marking of its products with the '997 Patent and by the filing of this Complaint.

62.     On information and belief, despite having knowledge of the '997 Patent and GDEP's products, Southwest intentionally copied the wear plate assembly used in GDEP's 7500 HD Fluid End product and has continued its infringement with disregard of the '997 Patent.

63.     Southwest's infringement of the '997 patent is willful, deliberate, and intentional, and Southwest is acting in reckless disregard of GDEP's patent rights.

64.     Because of Southwest's infringement of the '997 Patent, GDEP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

65.     Unless enjoined, Southwest, and/or others acting on behalf of Southwest, will continue their infringing acts, thereby causing additional irreparable injury to GDEP for which there is no adequate remedy at law.

66.     Southwest's actions render this an exceptional case and entitles GDEP to attorneys' fees and costs under 35 U.S.C. § 285.

**B.     Count II - Infringement of U.S. Patent No. 11,732,709 (the '709 Patent)**

67.     GDEP realleges and incorporates by reference the allegations of paragraphs 1 through 66 set forth above.

68.     Southwest directly infringes, literally or by the doctrine of equivalents, the '709 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States or importing into the United States the Accused Products.

69.     As a non-limiting example, Southwest directly infringes, literally or under the doctrine of equivalents, at least claims 1 and 2 of the '709 Patent in at least the following manner.

70.     The Accused Products include "[a] wear plate assembly of a drill pump, the wear plate assembly comprising: a wear plate extending between a first axial end and a second axial end, the wear plate comprising: an annular cross-section defined by a bore inner surface and a

radial outer seal surface, the bore inner surface being configured to form at least a portion of a

flow path between a housing and a piston when the piston is external to the housing," as shown in

the drawing of the Accused Products reproduced below, taken from p. 2 of **Exhibit D**, with

exemplary annotations added:



71.    The Accused Products include "an annular seal groove in the radial outer seal

surface at a position between the first axial end and the second axial end, and a shoulder extending

radially outward from the radial outer seal surface at the second axial end[]," and "a radial seal

positioned within the annular seal groove, the radial seal being compressible in a radial direction"

as illustrated in the above drawing. The wear plate assembly of the Accused Products can be seen

in more detail in the photograph below, which shows the radial outer surface, the annular seal

groove, and the shoulder in more detail (**Exhibit E**):



72.    Southwest has infringed, and continues to infringe, literally or by the doctrine of equivalents, at least claims 1 and 2 of the '709 Patent in violation of 35 U.S.C. § 271(a), by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

73.    On information and belief, Southwest indirectly infringes the '709 Patent, in violation of 35 U.S.C. § 271(b), by actively and knowingly inducing its customers to directly infringe one or more claims of the '709 Patent. Specifically, Southwest induces, encourages, and/or intends that its customers directly infringe the '709 Patent through, for example, their advertisement, marketing, sales, instructions, product manuals, technical support, onsite testing, use, quality assurance, and maintenance of the Accused Products. Southwest has known and knows that its customers' making and use of the Accused Products constitutes direct infringement of at least independent claim 1 of the '709 Patent.

74.    On information and belief, Southwest indirectly infringes the '709 Patent in violation of 35 U.S.C. § 271(c), by actively and knowingly contributing to infringement of one or more claims of the '709 Patent, at least by selling and/or offering to sell seals and components for wear plate assemblies (see p. 3 of **Exhibit D**), knowing that such seals and components are especially made or adapted for practicing one or more claims of the '709 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically, Southwest has known and knows that its seals are especially made or adapted for use with and in the Accused Products, and that after installation, use of the Accused Products by Southwest's customers constitutes direct infringement of at least claim 1 of the '709 Patent. Moreover, Southwest has known and knows that there is no substantial, non-infringing use for its seal because it is only compatible with the Accused Products.

75.    GDEP marks its products with the '709 Patent pursuant to 35 U.S.C. §287.

76.    Southwest has actual and constructive notice of the '709 Patent based at least in part on GDEP's marking of its products with the '709 Patent and by the filing of this Complaint.

77.    On information and belief, despite having knowledge of the '709 Patent and GDEP's products, Southwest intentionally copied the wear plate assembly used in GDEP's 7500 HD Fluid End product and has continued its infringement with disregard of the '709 Patent.

78.    Southwest's infringement of the '709 patent is willful, deliberate, and intentional, and Southwest is acting in reckless disregard of GDEP's patent rights.

79.    Because of Southwest's infringement of the '709 Patent, GDEP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

80.     Unless enjoined, Southwest, and/or others acting on behalf of Southwest, will continue their infringing acts, thereby causing additional irreparable injury to GDEP for which there is no adequate remedy at law.

81.     Southwest's actions render this an exceptional case and entitles GDEP to attorneys' fees and costs under 35 U.S.C. § 285.

**C.     Count III - Infringement of U.S. Patent No. 9,732,746 (the '746 Patent)**

82.     GDEP realleges and incorporates by reference the allegations of paragraphs 1 through 81 set forth above.

83.     Southwest directly infringes, literally or under the doctrine of equivalents, the '746 Patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States or by importing into the United States the Accused Products.

84.     As a non-limiting example, Southwest directly infringes, literally or under the doctrine of equivalents, at least independent claim 5 of the '746 Patent in at least the following manner.

85.     The Accused Products are a "fluid end of a plunger pump comprising: a casing defining at least one working space, the at least one working space comprising: an inlet bore centered on an inlet bore axis; an outlet bore centered on an outlet bore axis that is coaxial with the inlet bore axis; a plunger bore centered on a plunger axis, the plunger axis arranged perpendicular to the inlet bore axis; a valve cover bore centered on the plunger axis, the inlet bore, the outlet bore, the plunger bore, and the valve cover bore cooperating to define a cross bore intersection space, wherein the casing defines an inlet bore transition area at the intersection of the inlet bore and the cross bore intersection space;" as shown in the drawing of the Accused Products taken from p. 2 of **Exhibit D** reproduced below with annotations added:



86. On information and belief, the Accused Products include "a first V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis; a second V-shaped groove formed adjacent the inlet bore transition area and extending partially around the inlet bore axis, []the first V-shaped groove and the second V-shaped groove each comprise an upper surface and a lower surface that intersect at a fillet, the upper surface and the lower surface of the first V-shaped groove and the second V-shaped groove defining an exterior angle between 180 degrees and 270 degrees" as the Accused Products would need to include these features in order to provide interfaces to properly engage with the features of the inlet spring retainer shown below.

87.    On information and belief, the Accused Products also include "an inlet spring retainer including a first engagement portion and a second engagement portion, the inlet spring retainer orientable in a first orientation in which the inlet spring retainer is movable from the inlet bore to the plunger bore and a second orientation in which the inlet spring retainer engages the first V-shaped groove and the second V-shaped groove to inhibit movement of the inlet spring retainer from the inlet bore to the cross bore intersection space" as shown in the above drawing. These features can be further seen in the cropped version of the above drawing (from p. 2 of **Exhibit D**) reproduced below with annotations. The second engagement portion (not depicted below) would be opposite the first engagement portion.



88.    On information and belief, the inlet spring retainer in the drawing above is shown in an orientation where its first and second engagement portions engage, on information and belief,

with a V-shaped groove in the fluid end (located behind the inlet spring retainer depicted in the above drawing) so as to inhibit movement of the inlet spring retainer in a vertical direction. A similar structure and V-shaped groove would, on information and belief, also be provided on the opposite side of the inlet spring retainer (in front of the inlet spring retainer depicted in the above drawing).

89.     On information and belief, Southwest has infringed, and continues to infringe, literally or under the doctrine of equivalents, at least claim 5 of the '746 Patent in violation of 35 U.S.C. § 271(a), by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

90.     On information and belief, Southwest indirectly infringes the '746 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly inducing its customers to directly infringe one or more claims of the '746 Patent. Specifically, Southwest induces, encourages, and/or intends that its customers directly infringe the '746 Patent through, for example, their advertisement, marketing, sales, instructions, product manuals, technical support, onsite testing, use, quality assurance, and maintenance of the Accused Products. Southwest has known and knows that its customers' making and use of the Accused Products constitutes direct infringement of at least independent claim 5 of the '746 Patent.

91.     On information and belief, Southwest indirectly infringes the '746 Patent in violation of 35 U.S.C. § 271(c), by actively and knowingly contributing to infringement of one or more claims of the '746 Patent, at least by selling and/or offering to sell inlet spring retainers and components (see p. 3 of **Exhibit D**), knowing that such retainers and components are especially made or adapted for practicing one or more claims of the '746 Patent and that they are not a staple article or commodity of commerce suitable for substantial, non-infringing use. Specifically,

Southwest has known and knows that its inlet spring retainer is especially made or adapted to be used with the Accused Products, and that after installation, use of the Accused Products by Southwest's customers constitutes direct infringement of at least independent claim 5 of the '746 Patent for the same reasons as set forth hereinabove. Moreover, Southwest has known and knows that there is no substantial, non-infringing use for its inlet spring retainer because it is only compatible with the Accused Products.

92.    GDEP has continuously marked its products with the '746 Patent pursuant to 35 U.S.C. §287.

93.    Southwest has actual and constructive notice of the '746 Patent based at least in part on GDEP's marking of its products with the '746 Patent and by the filing of this Complaint.

94.    On information and belief, despite having knowledge of the '746 Patent and GDEP's products, Southwest intentionally copied the inlet spring retainer used in GDEP's 7500 HD Fluid End product and has continued its infringement with disregard of the '746 Patent.

95.    Southwest's infringement of the '746 patent is willful, deliberate, and intentional, and Southwest is acting in reckless disregard of GDEP's patent rights.

96.    Because of Southwest's infringement of the '746 Patent, GDEP has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

97.    Unless enjoined, Southwest, and/or others acting on behalf of Southwest, will continue their infringing acts, thereby causing additional irreparable injury to GDEP for which there is no adequate remedy at law.

98.    Southwest's actions render this an exceptional case and entitles GDEP to attorneys' fees and costs under 35 U.S.C. § 285.

## VI.
## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff GDEP respectfully prays for relief, as follows:

1) A judgment in favor of GDEP that Southwest has directly and willfully infringed, actively induced infringement of, and/or contributorily infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

2) An order and judgment preliminarily and permanently enjoining Southwest, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from further acts of infringement of the Asserted Patents;

3) A judgment awarding GDEP damages in an amount sufficient to compensate for Southwest's infringement of the Asserted Patents, and in no event less than a reasonable royalty for Southwest's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law, plus costs, and all other damages permitted under 35 U. S. C. § 284;

4) A judgment that Southwest's infringement of the Asserted Patents has been willful and deliberate;

5) A judgment awarding Plaintiff enhanced damages as a result of Southwest's willful and deliberate infringement of the Asserted Patents, pursuant to 35 U.S.C. § 284;

6) A judgment declaring this case is exceptional under 35 U.S.C. § 285 and awarding costs, expenses, and attorneys' fees to GDEP; and

7) Awarding GDEP such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil L.R. 3-6(a), GDEP

demands a trial by jury on all issues raised by the Complaint.

Dated: September 26, 2025

By: */s/Jennifer Klein Ayers*
     JENNIFER K. AYERS
     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     2200 Ross Ave, 20th Floor
     Dallas, TX 75201
     Telephone: 469.391.7400
     Facsimile: 469.391.7401
     JAyers@sheppardmullin.com

     ROBERT M. MASTERS
     JONATHAN R. DEFOSSE
     TIMOTHY P. CREMEN
     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     2099 Pennsylvania Avenue, N.W.
     Suite 100
     Washington, DC 20006-6801
     Telephone: 202.747.1900
     Facsimile: 202.747.1901
     RMasters@shepparmullin.com
     JDefosse@sheppardmullin.com
     TCremen@sheppardmullin.com

     **Attorneys for Plaintiff GD Energy Products, LLC**